UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SUSAN R. | : |
| | : |
| v. | :    C.A. No. 22-00055-MSM |
| | : |
| KILOLO KIJAKAZI, Commissioner | : |
| Social Security Administration | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

      This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on February 2, 2022 seeking to reverse the Decision of the Commissioner.  On July 15, 2022, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (ECF No. 11).  On August 11, 2022, Defendant filed a Motion to Affirm the Commissioner's Decision.  (ECF No. 12).  A Reply was filed on September 26, 2022.  (ECF No. 15).

      This matter has been referred to me for preliminary review, findings, and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 12) be GRANTED.

      **I.    PROCEDURAL HISTORY**

      Plaintiff filed an application for DIB on May 6, 2019 alleging disability since October 9, 2018.  (Tr. 197-198).  The application was denied initially on June 24, 2019 (Tr. 123-130) and on

reconsideration on January 11, 2020. (Tr. 132-140). Plaintiff requested an Administrative Hearing. On November 18, 2020, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 34-53). The ALJ issued an unfavorable decision to Plaintiff on January 12, 2021. (Tr. 13-28). The Appeals Council denied Plaintiff's request for review on December 2, 2021. (Tr. 1-4). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff contends that the Appeals Council was "egregiously mistaken" when it found that post-decision treatment notes and letters would not change the outcome, that the ALJ failed to give sufficient reasons for finding the treating providers' disability opinions less persuasive than other evidence, and that the ALJ unfairly minimized Plaintiff's subjective complaints.

The Commissioner disputes Plaintiff's claims and argues the ALJ's decision is supported by substantial evidence and must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan

v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d

726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence. The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone. See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers). 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors. Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements). Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most

important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id.

Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner.  Id. §§ 404.1520b(c), 416.920b(c).

### B.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D.     The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before

the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.  Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d

243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1.     Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

**2.      Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and

limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

## V. APPLICATION AND ANALYSIS

### A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's fibromyalgia and chronic fatigue syndrome were "severe" within the meaning of the applicable Regulations. (Tr. 19). The ALJ found that none of Plaintiff's impairments met or equaled a Listing. The ALJ assessed an RFC to perform light work as defined in 20 CFR § 404.1567(b), except that Plaintiff can frequently climb ramps and stairs; can frequently balance, stoop, kneel, crouch, and crawl; and can occasionally climb ladders, ropes, and scaffolds. Plaintiff also must avoid concentrated exposure to extreme cold, hazardous machinery, and heights. At Step 4, the ALJ found that Plaintiff could perform her past work as an art teacher. Additionally, at Step 5, the ALJ identified additional jobs that Plaintiff could perform and thus found Plaintiff was not disabled within the meaning of the Act.

### B. The Appeals Council Decision

The Appeals Council denied Plaintiff's request to review the ALJ's Decision. (Tr. 2). Plaintiff submitted several pieces of evidence to the Appeals Council for its consideration: (1) records from Dr. N. Thomas LaCava; (2) third-party statements from Ruth Brookover, Karen Kimball, Cathleen J. Markovitz, and Marilyn A. White; and (3) records from Lawrence Miller, LICSW dated April 7, 2021 through June 9, 2021. The Appeals Council concluded that the additional evidence submitted "[did] not show a reasonable probability that it would change the

outcome of the decision" and/or that it did not "relate to the period at issue." Id. Plaintiff argues that the Appeals Council committed "egregious error" and that remand is required in light of this additional information. (ECF No. 11 at pp. 8-9).

Generally, the discretionary decision of the Appeals Council to deny a request for review of an ALJ's decision is not reviewable. A judicial review under 42 U.S.C. § 405(g) is typically focused on the findings and reasoning of the ALJ, i.e., whether the ALJ's findings are supported by substantial evidence and whether the ALJ properly applied the law. Of course, it makes no sense from an efficiency standpoint for a reviewing court to spend time and resources critiquing the work of the Appeals Council when it has jurisdiction to review the underlying and operative ALJ decision. In other words, reversible error by an ALJ can be remedied by the Court regardless of what the Appeals Council did or did not do.

The First Circuit has, however, held that review of Appeals Council action may be appropriate in those cases "where new evidence is tendered after the ALJ decision." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001). In such cases, "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action." Id. This avenue of review has been described as "exceedingly narrow." Harrison v. Barnhart, C.A. No. 06-30005-KPN, 2006 WL 3898287 (D. Mass. Dec. 22, 2006). Further, the term "egregious" has been interpreted to mean "[e]xtremely or remarkably bad; flagrant." Ortiz Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting Black's Law Dictionary (7th ed.1999)).

In Mills, the First Circuit recognized that an Appeals Council denial of a request for review has all the "hallmarks" of an unreviewable, discretionary decision. Mills, 244 F.3d at 5. The Appeals Council is given a great deal of latitude under the regulations and "need not and often does not give reasons" for its decisions. Id. Thus, the First Circuit "assume[d] that the Appeals

Council's refusal to review would be effectively unreviewable if no reason were given for the refusal." Id. at p. 6.  It did, however, create a narrow exception for review when the Appeals Council "gives an egregiously mistaken ground for [its] action." Id. at p. 5.  The First Circuit concluded that this principle was not a "serious anomaly" because "there is reason enough to correct an articulated mistake even though one cannot plumb the thousands of simple 'review denied' decisions that the Appeals Council must issue every year." Id. at p. 6.

The instant issue focuses on whether the additional medical records and third-party letters submitted to the Appeals Council relate to the relevant period and whether there is a reasonable probability that they would have changed the outcome if considered by the ALJ.  Of course, as discussed above, the Appeals Council's determination must be viewed by this Court through the egregious error lens.  Plaintiff's arguments fall far short of convincing the Court that the Appeals Council's conclusions in this case were egregious error.  There is simply not convincing support in the record for Plaintiff's position.  However, out of fairness, the Court has fully reviewed the evidence in question in applying the Mills standard.

First, Plaintiff submitted records from Dr. LaCava beginning with bloodwork taken on January 18, 2021, six days after the ALJ's decision was issued.  Specifically, Plaintiff notes that the bloodwork shows "high hematocrit and low globulin (consistent with fatigue, weakness, and low energy), and high eosinophils (consistent with chronic inflammation).  Also present was high urine bacteria and lymphocytes, indicative of an infection such as the Lyme disease the ALJ found not severe." (ECF No. 11 at p. 9).  The Commissioner notes that this bloodwork was consistent with bloodwork submitted to, and considered by, the ALJ.  (ECF No. 12 at p. 16 citing Tr. 728, 731).  Plaintiff does not disagree that the numbers reflected in the bloodwork are "consistent" with what was reviewed by the ALJ but contends that the consistency itself amounts to objective

evidence that undermines the ALJ's credibility finding. (ECF No. 15 at p. 5). Plaintiff's argument misses the mark because she attempts to expand the narrow standard of review applicable to this Court's review of the Appeals Council's decision. On the basis of bloodwork that was taken after the hearing and was generally consistent with bloodwork submitted to the ALJ, there is no reasonable basis to find an "egregious error" committed by the Appeals Council. The Appeals Council refused to overturn the ALJ's decision because the additional evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision, and Plaintiff has not shown it was egregiously mistaken in that regard.

Additionally, Plaintiff submitted psychotherapy treatment records from Lawrence Miller, LICSW from April through June 2021, which Plaintiff argues demonstrate a "continued impact on her ability to function because of her mental health conditions." (ECF No. 11 at p. 9). The notes from counseling sessions that were considered by the ALJ demonstrated that Plaintiff had mild depression (Tr. 750) and her anxiety was improved and stable. (Tr. 733-734). These notes, too, are consistent with those considered by the ALJ and offer no basis upon which this Court could find that the Appeals Council committed egregious error.

Next, Plaintiff submitted several third-party statements. These statements are from Plaintiff's acquaintances and do not express specific functional limitations. They are conclusory disability statements that are "inherently neither valuable nor persuasive" in adjudicating disability claims. See 20 C.F.R. § 404.1520b(c). They, therefore, do not demonstrate error on the part of the Appeals Council.

The Appeals Council invites claimants to submit additional evidence after the ALJ's decision, but it cautions that the evidence will only justify review if it is "new," "material," and "relates to the period on or before the date of the hearing decision." (Tr. 8). See 20 C.F.R. §

404.970(a)(5). Here, Plaintiff is hard-pressed to argue that all of the evidence is "new," i.e., was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). The Appeals Council reasonably concluded that this new evidence was not outcome determinative after considering the ALJ's conclusions regarding this conflicting evidence, and Plaintiff falls far short of convincing the Court that the Appeals Council was egregiously mistaken in that regard.

### C. The ALJ's Evaluation of the Treating Providers' Disability Opinions

Next, Plaintiff argues that the ALJ erred in "rejecting" the opinions of Plaintiff's treating providers, Dr. LaCava (Tr. 716-717); Dr. Morris Papernik (Tr. 390); and the unsigned opinion from ProHealth. (Tr. 491-494). (ECF No. 11 at pp. 12-13). As noted, the applicable standard mandates that the ALJ not assign specific evidentiary weight to any medical opinion and not defer to the opinion of any medical source (including Plaintiff's treating providers). 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors. Id. The ALJ must address only the two most important factors – supportability and consistency – in evaluating an opinion's persuasive value. 20 C.F.R. § 404.1520c(b)(2), (c)(1)-(2). The ALJ will consider other factors, including a medical source's relationship with the claimant, areas of specialization, and familiarity with the record; however, the ALJ is not required to discuss how he weighed those factors. 20 C.F.R. § 404.1520c(b)(2), (c)(3)-(5).

Plaintiff contends that the opinion of Dr. LaCava contains more "limitations than those found by the ALJ, rendering the RFC the product of legal error." (ECF No. 11 at p. 12). Plaintiff further argues that the ALJ improperly assessed Plaintiff's pain because it was corroborated by Dr. Papernik's treatment notes. (Tr. 22, 23, 25). The ALJ noted that Dr. LaCava's opinion was

"not consistent with or supported by the claimant's longitudinal treatment records in the objective/clinical observations of the claimant therein or reported activities either before or after the date of this opinion" (Tr. 26). Dr. LaCava's two-page questionnaire opined that Plaintiff suffers from significant pain, would be off task 25% or more of the time, could sit and stand/walk less than two hours in an eight-hour workday and would be absent "more than four days per month." (Tr. 716-717).

The ALJ considered this checkbox questionnaire but engaged in a recitation of the medical evidence buttressing the lack of consistency and supportability in Dr. LaCava's opinion as compared to the other evidence of record. For example, the ALJ noted that Plaintiff's examinations were unremarkable, and she did not seek treatment for diffuse pain symptoms until "early-to-mid 2020," when she was diagnosed with Lyme disease and started on antibiotics. (Tr. 23; see Tr. 684, 719, 754). Additionally, Plaintiff denied significant problems with pain in early-2019 (Tr. 23 citing Tr. 384), was not taking fibromyalgia medication and had improved energy in April 2019 (Tr. 23 citing Tr. 399), denied pain and showed no sign of physical dysfunction in May 2019 (Tr. 23 citing Tr. 471), and told Dr. Papernik that she felt "much improved" and did not require anti-fatigue medication after mold detoxification in June 2019. (Tr. 23 citing Tr. 496). Plaintiff later told both Ms. Carlone and Dr. LaCava that she felt better and was not experiencing as much pain with antibiotics for Lyme disease. (Tr. 719, 733-734). In short, the ALJ properly considered all of the evidence of record in finding that Dr. LaCava's questionnaire was not persuasive or supported by the record as a whole.

Second, Plaintiff argues that the ALJ engaged in "hasty generalization" in unfairly dismissing the June 20, 2019 unsigned questionnaire from ProHealth. (ECF No. 11 at p. 13). Plaintiff notes that the ALJ relied upon the same basic arguments in not crediting the unsigned

opinion as he did in rejecting Dr. LaCava's opinion. However, Plaintiff further claims that the ALJ relied on "single snapshot phrases" of "feeling much improved" and "cognitively improved." Id. The Court disagrees. The ALJ noted that Plaintiff reported significant improvement in cognition and energy and stated that she did not need anti-fatigue medication on the same day that the unsigned opinion was completed. (Tr. 26). Rather than engaging in a hasty generalization, as alleged by Plaintiff, the ALJ reasonably noted the inconsistency between this questionnaire and the other evidence of record.

Third, Plaintiff alleges the ALJ committed "patent error" in dismissing the opinion of Dr. Papernik because the ALJ deemed it to be "based entirely on claimant's subjective reports to Dr. Papernik." (ECF No. 11 at p. 13). Plaintiff asserts that the subjective complaints she lodged were consistent with the medical evidence and should not have been dismissed. The Commissioner argues Dr. Papernik's "broad" conclusion that Plaintiff was incapable of working encroached on the issue reserved to the Commissioner, and his opinion was not supported by supportive medical findings. (ECF No. 12 at p. 21). Further, as the ALJ noted, at the time Dr. Papernik rendered his opinion, Plaintiff was working in the classroom that she alleges contained mold, and he opined that a "medical leave of absence" from that classroom would enable her to return to work. (Tr. 21-26). The ALJ thoroughly discussed Dr. Papernik's treatment records but ultimately concluded, on the basis of the record as a whole, that she was not as limited as alleged. Plaintiff has shown no grounds for reversal of the ALJ's decision.

### D. The ALJ's Subjective Symptom Analysis

Next, Plaintiff argues the ALJ erred by assigning too much weight to her reported daily activities. She also argues that the ALJ erred in focusing on the lack of objective evidence to support her subjective complaints. The Commissioner contends that the ALJ considered all of

Plaintiff's subjective symptoms but found that the intensity, persistence and limiting effects were not entirely consistent with the medical and other evidence of record.  Further, the Commissioner argues that the ALJ applied the appropriate standard and that substantial evidence supports the ALJ's decision.

The Court first considers the ALJ's analysis of Plaintiff's subjective symptoms.  The ALJ accurately noted Plaintiff's reported activities included doing arts and crafts, cooking, cleaning, and traveling.  Plaintiff did not receive any assistance in performing those tasks.  (Tr. 21). Moreover, Plaintiff reported that her symptoms improved when she left the classroom tainted by mold, that she previously taught in. (Tr. 399-400).  In Reply, Plaintiff contends that the ALJ erred in failing to account for Plaintiff's need to take breaks during daily activities at home.  (ECF No. 15 at p. 9).  Nevertheless, the ALJ articulated sufficient reasons for his credibility assessment and, since those reasons are supported by substantial evidence, they are entitled to deference.  In short, as argued by the Commissioner, the ALJ considered Plaintiff's subjective symptoms, but supportably determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record.  Plaintiff has shown no reversible error in the ALJ's assessment.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 11) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 12) be GRANTED.  I further recommend that Final Judgment enter in favor of the Commissioner.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by

the District Court and the right to appeal the District Court's decision.  See <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, In. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

  /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 15, 2022